**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **S&A FUTURES, LLC – SERIES 2 and KURT KRUEGER,** | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **vs.** | ) ) | **Case No. 11 C 7629** |
| **SYSCO CHICAGO, INC., REAL SAUSAGE CORP., L&P PROVISIONS, INC., and MAKOWSKI REAL SAUSAGE, INC.,** | ) ) ) ) ) | |
| **Defendants.** | ) ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

S&A Futures, LLC and Kurt Krueger have sued Sysco Chicago, Inc., Real

Sausage Corp., L&P Provisions, Inc., and Makowski Real Sausage, Inc., for unfair

competition and related claims under the Lanham Act and Illinois state law. L&P has

moved to dismiss all of plaintiffs' claims against it, and Sysco has moved to dismiss

plaintiffs' complaint in part. For the reasons stated below, the Court grants both

motions in part and denies them in part.

**Background**

The Court accepts the allegations in plaintiffs' complaint as true for the purpose

of resolving the motions to dismiss. *See Hallinan v. Fraternal Order of Police of Chi.

Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009).

The Krueger family has manufactured sausages for nearly one hundred years.

From 1915 until May 1997, they did so under the name "Krueger Sausage Company, Inc.," and they identified their products with what they refer to as the "Krueger sausage marks" and a corresponding logo. Kurt Krueger was the president of the Krueger Sausage Company.

In May 1997, Krueger sold his right, title and interest in and to the corporation and the Krueger sausage marks to Abbyland Illinois, Inc. For the next nine years, Abbyland sold meat products using the Krueger sausage marks. During this time, Abbyland authorized Real Sausage and L&P to manufacture meat products and packing material with the Krueger sausage marks and to allow the products' sale by dealers including Sysco.

On May 12, 2006, Abbyland sold back to Krueger its right, title and interest in and to the company's assets, including the right to use the sausage marks. Krueger later transferred these assets to S&A, a limited liability company of which he is the sole member.

On May 31, 2006, Krueger's attorney sent letters to Real Sausage and L&P, stating:

> It is my understanding that up to this point, you have been distributing Krueger Sausage on behalf of Abbeyland [sic]. That relationship has now ended. Please forward all recipes, materials, vendor names and customers to Kurt Krueger, immediately . . . .
>
> Failure to comply with the above within 24 hours will result in immediate response. As you are aware, any delay can have grave consequences with respect to customer appreciation and, therefore, any delay will have to be regarded as an intentional act, the damages for which will be sought immediately. Any delay and I have been authorized to and must present a petition for a restraining order from the court for relief.

Compl. Ex. D.

2

At some point in July 2010, Krueger became aware of a pair of invoices showing that two Chicago restaurants had purchased an item called "Krueger Bratwurst" from Sysco. Later that month, Krueger met with a Sysco representative and asked him verbally and in writing to "cease and desist selling bratwurst under the name of 'Krueger Bratwurst.'" *Id.* ¶ 92. The letter he wrote stated:

> It has recently come to my attention, and I have confirmed that Sysco has been selling a bratwurst under the name of Krueger Bratwurst that was manufactured by Real Sausage Company and distributed by L&P Provisions, both of whom were served letters in 2006 to cease both production and distribution of the Krueger Bratwurst. While it is unfortunate that they have ignored the letter, the situation can be easily remedied by your discontinuing your purchases from L&P and or Real Sausage Company and continuing your purchase of Krueger's Bratwurst through the current authorized manufacturer, New Packing Co. . . . I would appreciate if you could provide me with any information regarding sales of Krueger Bratwurst products from at least May 31, 2006.

*Id.* Ex. H.

On September 21, 2011, plaintiffs filed this lawsuit in the Circuit Court of Cook County. Defendants removed the case to federal court on October 26, 2011.

## Discussion

Defendants[1] have moved to dismiss plaintiffs' complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "When analyzing the sufficiency of a complaint, [the Court] construe[s] it in the light most favorable to the nonmoving party, accept[s] well-pleaded facts as true, and draw[s] all inferences in the nonmoving party's favor." *Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 837 (7th Cir. 2010). Plaintiffs have "stated a claim only if [they have] alleged enough facts to

---

[1] The Court's use of the word "defendants" in this opinion refers to Sysco and L&P because the remaining defendants have not joined their motions.

3

render the claim facially plausible, not just conceivable." *Id.* "[L]egal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to [the] presumption" of truth." *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

Plaintiffs make fifteen claims against defendants: (1) plaintiffs are entitled to a declaratory judgment of trademark ownership; (2) defendants violated the Lanham Act by infringing plaintiffs' trademark rights; (3) defendants violated the Lanham Act through false designation of origin; (4) defendants violated the Lanham Act through false advertising; (5) defendants violated the Lanham Act through unfair competition; (6) defendants infringed plaintiffs' trademark rights under Illinois common law; (7) defendants violated common-law principles of fair competition; (8) defendants violated the Lanham Act through trademark dilution; (9) defendants violated the Illinois Consumer Fraud and Deceptive Business Practices Act; (10) defendants violated the Illinois Uniform Deceptive Trade Practices Act; (11) defendants violated the Illinois Trademark Registration and Protection Act; (12) plaintiffs are entitled to an accounting; (13) defendants engaged in a civil conspiracy; (14) defendants have unlawfully converted plaintiffs' property; and (15) defendants have been unjustly enriched.

In their response to defendants' motion to dismiss, plaintiffs ask the Court to dismiss count two against all defendants and to dismiss count fourteen against Sysco. They ask the Court to dismiss counts three, four, and five with leave to replead them as a single count. Finally, they seek leave to amend counts one and eight and replead them under different statutes. Defendants do not oppose these requests, and the Court therefore grants them, with the exception of count one.

## A.     L&P's timeliness arguments

L&P contends that counts one through eight and eleven of plaintiffs' complaint should be dismissed under the doctrine of laches and that counts nine, ten, and twelve through fifteen are barred by the applicable statutes of limitations.  Laches and limitations are affirmative defenses, and "a plaintiff is not required to plead facts in the complaint to anticipate and defeat affirmative defenses."  *Indep. Trust. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012).  "But when a plaintiff's complaint nonetheless sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate."  *Id*.  L&P argue that plaintiffs' allegation that they sent L&P a cease & desist letter in May 2006 establishes that their claims accrued then and thus that they are barred by laches or the statute of limitations.

L&P separates the complaint's claims into state-law claims that are subject to established statutes of limitations (three years for counts nine and ten; five years for counts twelve through fifteen) and the remaining "Lanham Act claims or common law trademark claims" for which "there is no specific statute of limitations."  L&P's Mem. at 4.[2]  When considering whether a Lanham Act claim is barred by laches, federal courts have used a state's "analogous limitations period as a baseline for determining whether a presumption of laches exists."  *Hot Wax Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 821 (7th Cir. 1999).  Accordingly, courts have "found that the most analogous Illinois

---

[2]Count eleven, in which plaintiffs assert a claim under the Illinois Trademark Registration and Protection Act, 765 ILCS 1036/65, is not a common law claim.  The statute does, however, lack a limitations period.  *Superior Paintless Dent Removal, Inc. v. Superior Dent Removal, Inc.*, 454 F. Supp. 2d 769, 772 (N.D. Ill. 2006).  It also provides that "the construction given [the Lanham Act] shall be examined as persuasive authority for interpreting and construing this Act."  765 ILCS 1036/90.

limitation period [is] the three-year-statute of limitations found in the Illinois Consumer Fraud and Deceptive Business Practices Act." *Chattanooga Mfg., Inc. v. Nike, Inc.*, 301 F.3d 789, 793 (7th Cir. 2002); *see also Monotype Imaging, Inc. v. Bitstream, Inc.*, No. 03 C 4349, 2005 WL 936882, at *10 n.11 (N.D. Ill. Apr. 21, 2005) (noting the "three year statute of limitations that courts often apply in analyzing laches in trademark cases").

Thus, L&P's argument is that both sets of claims are barred if they accrued in May 2006. Plaintiffs do not dispute this, at least for purposes of the present motion. Rather, they contend only that the complaint does not clearly demonstrate that their claims accrued then. The parties appear to agree that the legal standard governing when the claims accrued is effectively the same for both of the defenses.

Statutes of limitations in Illinois begin to run when "the injured party knows or should have known of his injury." *City Nat'l Bank of Fla. v. Checkers, Simon & Rosner*, 32 F.3d 277, 282 (7th Cir. 1994). This occurs "when the injury could have been discovered through the exercise of appropriate diligence." *McWane, Inc. v. Crow Chi. Indus., Inc.*, 224 F.3d 582, 585 (7th Cir. 2000).

Similarly, "[f]or laches to apply in a trademark infringement case, the defendant must show that the plaintiff had knowledge of the defendant's use of an allegedly infringing mark [and] that the plaintiff inexcusably delayed in taking action with respect to the defendant's use." *Chattanooga Mfg.*, 301 F.3d at 792-93. "Addressing the first part of the analysis, it is clear that a plaintiff must have actual or constructive notice of the defendant's activities. . . . [A] trademark owner is chargeable with information it

might have received had due inquiry been made." *Id*. at 793 (internal quotation marks and citation omitted).

L&P maintains that plaintiffs were on notice of their claims as soon as they sent the May 31, 2006 letter. It argues that plaintiffs "at a minimum should have known of L&P's allegedly infringing conduct" as of that date based on plaintiffs' allegations in the complaint that Krueger's letter "requested that L&P cease and desist from producing or selling any Krueger products." L&P's Reply at 3 (quoting Compl. ¶ 60). Plaintiffs respond that the complaint does not show that they knew or should have known of L&P's alleged conduct in May 2006 and that "[i]n fact, the first indication of a defendant's use of an infringing mark occurred on or about July 2, 2010 when the Plaintiffs received a copy of Sysco's first invoice." Pls.' Resp. at 4.

L&P argues that "Plaintiffs contend in their Complaint that L&P has 'continuously' used the Krueger Sausage Marks since their agreement was terminated in May of 2006." L&P's Reply at 4. This misquotes the complaint. The paragraphs cited by L&P do not contain the word "continuously"; rather, plaintiffs allege that L&P, "[d]espite the termination of their agreement with Abbyland . . . *continues to*" use the sausage marks. Compl. ¶ 70 (emphasis added). Although this wording arguably could be subject to multiple interpretations, it is not an unambiguous allegation that L&P was using the sausage marks in a manner that Krueger could have discovered in May or June 2006 and that L&P continued to do so through July 2010. Nor is there any other affirmative statement in the complaint that L&P's misuse of the sausage marks occurred before July 2010.

If plaintiffs had clearly alleged in their complaint that L&P's misuse of the

7

sausage marks had never ceased after its receipt of Krueger's May 2006 letter, L&P's argument might be more convincing. Krueger's letter indicated that he knew that L&P and the other defendants had at least been authorized to use the sausage marks, and a business owner in this position arguably might be expected to investigate whether the letter's recipients had complied with his request. Absent, however, a definite allegation in the complaint that there was misbehavior for Krueger to discover in May 2006 (or at any time before July 2010), the Court is not persuaded that Krueger's claims are barred as a matter of law such that they are subject to dismissal under Rule 12(b)(6). This is particularly true in light of the Seventh Circuit's admonition that "[d]ismissing a complaint as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations." *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009).

For these reasons, the Court denies L&P's motion to dismiss the claims against it on timeliness grounds.

## B. Count one – declaratory judgment

In count one of their complaint, plaintiffs allege that "[i]t is the Defendants' position that the Plaintiffs do not have a valid and enforceable right in and to the Krueger Assets." Compl. ¶ 146. They seek a declaratory judgment "finding that Plaintiffs have a valid and enforceable common law trademark right in and to the Krueger Sausage Marks." *Id*. ¶ 151A. Sysco asks the Court to dismiss count one because plaintiffs "fail to point to any facts that demonstrate the existence of a dispute with respect to Plaintiffs' ownership of rights in the Krueger marks sufficient to justify a declaratory judgment action" and the claim therefore "seeks an impermissible advisory

opinion.  Sysco's Reply at 4.  Sysco also contends that the claim is duplicative of plaintiffs' other trademark claims.

"[I]t is well established that the 'case or controversy' requirement applies to declaratory judgments, just as it applies to every other kind of litigation in federal court." *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 628 (7th Cir. 2007). "The question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotation marks and citation omitted).

In support of its contention that plaintiffs are requesting an advisory opinion, Sysco cites *Arcadia Group Brands Ltd. v. Studio Moderna, SA*, No. 10 C 7790, 2011 WL 3584469 (N.D. Ill. Aug. 15, 2011).  In that case, the plaintiff claimed that the defendant had infringed its trademark by selling a brand with a similar name.  The defendant asserted a counterclaim for declaratory relief, stating in its complaint that it was "entitled to a declaratory judgment that it is the senior user of its . . . mark and has therefore not infringed" on the plaintiff's mark.  *Id*. at *4.  Although the defendant later stated in its brief that it was "merely seeking a declaration that it ha[d] not infringed upon [the plaintiff's] alleged trademarks," the court concluded that the terms of the complaint controlled.  *Id*.  The court granted the plaintiff's motion to dismiss the claim because the plaintiff "ha[d] never contended that it ha[d] any interest in the [defendant's] mark and [defendant was] thus seeking an advisory opinion where no

dispute exists." *Id*.

The Court finds the reasoning of this case persuasive, and plaintiffs do not specifically attempt to distinguish it. Instead, they respond that "it has not been determined that 'no dispute exists'" because defendants stated in their Joint Rule 26(f) report that they "expect to take discovery with respect to . . . Plaintiffs' claim of rights in the mark KRUEGER." Pls.' Resp. at 8. This statement does not appear to represent a contention that plaintiffs do not have a valid claim of rights in their trademark – particularly in light of Sysco's later declaration that it "has never contended that it owns or otherwise has any interest in the Krueger Sausage Marks or the Krueger Assets." Sysco's Reply at 3.

Even if Sysco were challenging plaintiffs' ownership rights, the Court is persuaded that plaintiffs' request for a declaratory judgment on the subject "fails to add anything that will not be decided by the other pending counts." *See Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 778 (N.D. Ill. 2008). For the plaintiffs to prevail on their various claims under the Lanham Act and Illinois trademark law, they necessarily must prove that they have the right to protect the marks at issue. A claim for declaratory judgment adds nothing of substance.

Because count one adds nothing to the case, the Court dismisses it as to all defendants.

## C.    Count eleven – dilution under Illinois law

In count eleven of their complaint, plaintiffs seek relief under the anti-dilution provision of the Illinois Trademark Registration and Protection Act, which states that the

10

"owner of a mark which is famous in this State shall be entitled . . . to an injunction against another person's commercial use of a mark or tradename, if the use begins after the mark has become famous and causes dilution of the distinctive quality of the mark."  765 ILCS 1036/65(a).

Defendants argue for dismissal on the ground that "the protection of the Illinois Anti-Dilution statute is not available to competitors under Illinois case law."  *AHP Subsidiary Holding Co. v. Stuart Hale Co.*, 1 F.3d 611, 619 (7th Cir. 1993).  They contend that allegations such as the following establish that the parties are competitors:

> Purchasers are likely to purchase goods of L&P, believing those goods or services are affiliated with S&A, thereby resulting in a loss of sales by S&A.

Compl. ¶ 76.

> Purchasers are likely to purchase goods of Sysco, believing those goods or services are affiliated with S&A, thereby resulting in a loss of sales by S&A.

*Id*. ¶ 100.

> The Defendants, on information and belief, have been and are improperly exploiting the fame and goodwill inherent in the Krueger Sausage Marks to find and divert potential customers away from the Plaintiffs in the hope to sell such customers their own competing products.

*Id*. ¶ 210.

> Had the consuming public known the truth about the Defendants' deceptive practices, on information and belief, the consuming public would not have purchased the Defendants' meat and food products or in the alternative would have sought the Plaintiffs' meat and food products.

*Id*. ¶ 255.

In response, plaintiffs argue only that "[t]o date, it has not been determined that the Plaintiffs and the Defendants are in fact competitors" and that "it is premature to

11

resolve this issue." Pls.' Resp. at 9-10. In support, they cite *Whitley v. Frazier*, 21 Ill. 2d 292, 294, 171 N.E.2d 644, 646 (1961) ("It is clear that an allegation made on information and belief is not equivalent to an allegation of relevant fact."). Their argument appears to be that because they made some of their allegations on information and belief, the Court may not rely on those allegations to determine whether plaintiffs have pleaded themselves out of Court. The case they cite, however, stands for no such thing: the Illinois Supreme Court in *Whitley* examined a complaint with a substantial number of allegations made on information and belief for "its sufficiency for purposes of subsequent amendment." *Id*. at 295, 171 N.E.2d at 646. The court concluded that the complaint was sufficient to permit subsequent amendment, noting that "in these questions of practice the court should look to the essence of the allegations rather than to their form; and that insofar as present purposes are concerned the information-and-belief recitation may be treated as a matter of form only." *Id*.[3]

Plaintiffs provide no other support for their view that the Court may not consider allegations made on information and belief. The Court does not believe that the nature of such allegations – which involve a plaintiff "representing that he has a good-faith reason for believing what he is saying, but acknowledging that his allegations are based on secondhand information that he believes to be true" – provides support for plaintiffs' characterization. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Corp. v. Walgreen*

---

[3]Even if the holding in *Whitley* were as plaintiffs contend, the case would not help them because federal law, not state law, supplies the pleading standard in federal court.

*Co.*, 631 F.3d 436, 442 (7th Cir. 2011) (internal quotation marks and citations omitted). The Court therefore turns to the question of whether, in light of all of the allegations in the complaint, plaintiffs have in fact alleged that defendants are their competitors.

Although Illinois law does not define "competitors" for purposes of the anti-dilution statute, courts considering the question have found it sufficient that parties are engaged in the same kind of business in the same area. *See, e.g.*, *EZ Loader Boat Trailers, Inc. v. Cox Trailers, Inc.*, 746 F.2d 375, 376 (7th Cir. 1984) ("Both parties to this appeal manufacture boat trailers); *Jake Flowers, Inc. v. Kaiser*, No. 01 C 4247, 2002 WL 31906688, at *11 n.16 (N.D. Ill Dec. 31, 2002) ("From the tenor of the pleadings, however, it is clear that the parties view one another as competitors in the broader fast food marketplace."); *FASA Corp. v. Playmates Toys, Inc.*, 869 F. Supp. 1334, 1358 (N.D. Ill. 1994) ("[T]here can be no serious question [as to whether the parties compete] for market share in the area of futuristic toy products. This lawsuit arises directly out of [plaintiff's] efforts . . . to produce a toy line of futuristic robot-like models and Playmates' production of a competing line of toys.").  This accords with the word's definition under the federal trademark statute.  *See New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1116 (C.D. Cal. 2004) ("For purposes of the Lanham Act, competitors are persons endeavoring to do the same thing and each offering to perform the act, furnish the merchandise, or render the services better or cheaper than his rival. They are parties vying for the same dollars from the same consumer group.") (internal quotation marks and citations omitted).

Plaintiffs' allegations quite clearly reflect that the parties compete for market

13

share regarding similar products. The fact that both sides are engaged the same type of business is apparent from plaintiffs' allegation that defendants sold plaintiffs' products when they had the opportunity to do so. Moreover, even if it were not enough that plaintiffs squarely allege that defendants currently sell "competing products," plaintiffs' allegations that "the Defendants' meat and food products" might be seen as an "alternative [to] the Plaintiffs' meat and food products" clearly indicate the competitive nature of the two sides' businesses. Compl. ¶¶ 210, 255. Plaintiffs' claim is therefore barred under Illinois law. *AHP*, 1 F.3d at 619.

## D.      Count twelve – accounting

To state a claim for the equitable relief of an accounting, plaintiffs must allege the absence of an adequate remedy law and at least one of: "(1) a breach of a fiduciary relationship, (2) a need for discovery, (3) fraud, or (4) the existence of mutual accounts which are of a complex nature." *Kempner v. Mobile Elecs., Inc., v. Sw. Bell Mobile Sys.*, 428 F.3d 706, 715 (7th Cir. 2005). Plaintiffs state in their complaint that they "have suffered damages, severe and irreparable harm to their trade reputation and goodwill, and have no adequate remedy at law." Compl. ¶ 244. They also state that they are "in need of and are entitled to conduct written and oral discovery in order to determine the Plaintiffs [sic] financial and legal position relevant to the rights and responsibilities of the Defendants." *Id*. ¶ 243.

Sysco argues that "[a]n accounting claim is improper without a specific, recognized factual predicate." *Glovaroma, Inc. v. Maljack Prods., Inc.*, 71 F. Supp. 2d 846, 857 (N.D. Ill. 1999). It contends that plaintiffs' allegations simply recite the legal

14

elements of their claim and fail to provide a specific factual basis for the need for an accounting.  *See Sefton v. Toyota Motor Sales U.S.A.*, No. 09 C 3787, 2010 WL 1506709, at *6 (N.D. Ill Apr. 14, 2010) ("Plaintiff responds by reference to her complaint, which states, in an entirely conclusory manner, that she has no adequate remedy at law.  Merely reciting the elements of a claim is not sufficient to survive a motion to dismiss.").  Sysco also contends that discovery, which has yet to take place in this case, will be an adequate mechanism through which to facilitate the exchange of information.  *See Cole-Haddon, Ltd. v. Drew Philips Corp.*, 454 F. Supp. 2d 772, 778 (N.D. Ill. 2006) (dismissing action for accounting and noting that "complete financial information and business records will be provided during discovery, and this information is not essential at this stage of the proceedings").  The Court agrees.  Plaintiffs' conclusory allegations do not reflect either the required absence of a remedy at law or the accompanying need for discovery.

**E.      Count thirteen – civil conspiracy**

In count thirteen of their complaint, a claim of civil conspiracy, plaintiffs allege the following:

> Sysco, Real and L&P, on information and belief, agreed to manufacture, package, market and sell meat and food products bearing or that would ultimately bear Krueger Sausage Marks so as to benefit from the Plaintiffs' Krueger Sausage Marks fame and goodwill.

> Sysco, Real and L&P, on information and belief, acting in concert and in furtherance of their agreement to defraud consumers placed Krueger Sausage Marks on the Defendants' meat and food products.

> Sysco, Real and L&P, on information and belief, manufactured and sold meat and food products bearing or that would ultimately bear Krueger Sausage Marks so as to benefit from the Plaintiffs' Krueger Sausage Marks fame and goodwill.

15

Compl. ¶¶ 246-48.

Defendants argue that these allegations are conclusory and fail to state facts sufficient to assert a plausible claim of conspiracy. In response, plaintiffs cite a 2003 Seventh Circuit case stating that "[i]t is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." *Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003). As defendants point out, however, *Hoskins* predates the Supreme Court's more recent revision of federal pleading standards. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 548 (2007), the Court affirmed the dismissal of a complaint alleging "certain parallel conduct . . . absent some factual context suggesting agreement, as distinct from identical, independent action." The Court stated that "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice." *Id*. at 556. The Seventh Circuit has subsequently confirmed that a claim should be dismissed when a complaint "is bereft of any suggestion, beyond a bare conclusion, that the . . . defendants were leagued in a conspiracy." *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009).

Although plaintiffs' complaint in this case references a purpose and an activity for the alleged conspiracy, it includes nothing about the alleged conspiracy among the defendants beyond the conclusory statements that defendants "agreed" and "act[ed] in concert." Compl. ¶¶ 246-47. This "conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Twombly*, 550 U.S. at 557.

16

F.     **Count fifteen – unjust enrichment**

In count fifteen, plaintiffs allege that defendants "have diverted sales from the Plaintiffs and, as such, have been unjustly enriched." Pls.' Resp. at 13. Sysco seeks dismissal of this claim against it on the ground that it is "impermissibly duplicative of remedies available under the substantive unfair competition counts." Sysco's Mem. at 11. "[C]ourts have the authority to dismiss duplicative claims if they allege the same facts and the same injury." *FDIC v. Saphir*, No. 10 C 7009, 2011 WL 3876918, at *9 (N.D. Ill. Sept. 1, 2011).

Plaintiffs allege in count fifteen that defendants "had access to confidential customer lists and a spice block . . . soon after Abbyland Illinois, Inc. purchased the Krueger Assets." Compl. ¶ 267. They claim that defendants "wrongfully misappropriated this Confidential Information" and have used it "to manufacture, package and sell meat and food products that not only employ Krueger's spice block but also Krueger's Krueger Sausage Marks." *Id*. ¶¶ 271-72. Finally, they allege that defendants have used the information "to improve their business position by contacting and soliciting customers without compensation." *Id*. ¶ 276.

Although both this claim and plaintiffs' unfair competition claims generally concern defendants' alleged sale of products using the Krueger name, plaintiffs do not allege elsewhere in the complaint the specific facts referenced in count fifteen – that defendants misappropriated confidential information and used it for a business advantage. The Court concludes that count fifteen does not necessarily involve the same facts and injury as plaintiffs' purely trademark-based counts and thus that it is not

17

impermissibly duplicative of those claims.

**Conclusion**

For the reasons stated above, the Court grants defendants' motions to dismiss [docket nos. 27, 30] in part and denies them in part. Count one is dismissed as to all defendants. Counts three, four, five, eight, and thirteen are dismissed without prejudice. Counts two and eleven are dismissed with prejudice as to defendants Sysco and L&R. Counts twelve and fourteen are dismissed with prejudice as to Sysco only. The Court otherwise denies defendants' motions. Plaintiffs are granted leave to file an amended complaint by no later than March 27, 2012. The case remains set for a telephone status hearing on March 21, 2012 at 9:00 a.m.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 13, 2012